*1998 OK CR 28*

**Jemaine Monteil CANNON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–369.

Court of Criminal Appeals of Oklahoma.

May 8, 1998.

Rehearing Denied June 9, 1998.

Sid Conway, Julie O'Connell, Asst. Public Defenders, Tulsa, for appellant at trial.

Tim Harris, Larry Edwards, Assistant District Attorneys, Tulsa, for the State at trial.

Barry L. Derryberry, Asst. Tulsa Co. Public Defender, Tulsa, for appellant on appeal.

W.A. Drew Edmondson, Attorney General Of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for appellee on appeal.

## OPINION

STRUBHAR, Vice-Presiding Judge:

¶1 Jemaine Monteil Cannon, Appellant, was tried by jury and convicted of Murder in the first degree (21 O.S.1991, § 701.7(A)), in the District Court of Tulsa County, Case No. CF–95–727, the Honorable Clifford E. Hopper, District Judge, presiding. The jury found four aggravating circumstances [1] and

---

1. 1) The defendant was previously convicted of a felony involving the use or threat of violence to the person; 2) The murder was especially heinous, atrocious, or cruel; 3) The murder was committed by a person while serving a sentence of imprisonment on conviction of a felony; and 4) The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(1), (4), (6) and (7).

recommended death. The trial court sentenced Appellant accordingly. From this Judgment and Sentence, he appeals.[2]

## FACTS

¶2 On February 3, 1995, Appellant stabbed to death his girlfriend, Sharonda Clark.[3] The contested issue at trial was whether Appellant stabbed Clark with malice aforethought or in self-defense. Tulsa police found Clark's body in her apartment after Jacque Pepper contacted police when she could not locate Clark who had been missing for over twenty-four hours. Clark had been stabbed several times in the neck and chest. She also had incise wounds on her hands commonly characterized as defensive wounds. Sheena Elliott testified that she saw Appellant and Clark around noon on the third and that she sensed they were having an argument. Elliott tried to telephone Clark later in the afternoon to check on her, but Appellant told her that Clark was not there even though Elliott could hear Clark in the background. No one, except Appellant, had contact with Clark after noon on the third.

¶3 On February 4, 1995, Appellant borrowed money, bought a bus ticket and went to Flint, Michigan to stay with an uncle. From Michigan, Appellant telephoned his mother who told him Clark was dead and to turn himself in and tell police his side of the story. After convincing Appellant to turn himself in, Appellant's mother told Tulsa police detective Tom Fultz Appellant's location. Shortly thereafter, Appellant telephoned Detective Fultz and told him that he killed Clark in self-defense. Appellant was arrested shortly after his conversation with Fultz and he was returned to Oklahoma. Although Appellant claimed he killed Clark in self-defense and that they had a violent fight, Appellant did not have any wounds or noticeable abrasions when he was arrested. Other facts will be discussed as they become relevant to the propositions of error.

## ISSUES RELATING TO JURY SELECTION

¶4 In his first proposition of error, Appellant argues he was denied due process of law and trial by an impartial jury because the trial court denied his motion to lifequalify the jury panel. *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).[4] Prior to trial, Appellant filed a Motion To Life Qualify Of (sic) The Jury requesting the trial court to ask prospective jurors the life-qualifying questions enumerated in the motion after the trial court asked prospective jurors about their beliefs on the death penalty. At the pre-trial motion hearing, Appellant's counsel asked the trial court to life-qualify the jury panel because they felt "like if those questions were to come from the Court rather than just from defense counsel that it carries a lot more weight." The trial court denied the motion without comment.

¶5 In *Morgan*, the Court held that "[a] juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." *Id.* at 729, 112 S.Ct. at 2229. As a result of such an inability to comply with the law, a capital defendant may challenge for cause any prospective juror who maintains that the death penalty should automatically be imposed upon a finding of guilt. *Id.* at 727–31, 112 S.Ct. at 2229–30. To detect those prospective jurors who are incapable of returning a verdict less than death and are incapable of following the law, a defendant in a capital

---

2. Appellant's Petition in Error was filed in this Court on September 25, 1996. Appellant's brief was filed May 28, 1997, and the State's brief was filed September 23, 1997. A reply brief was filed on December 2, 1997. The case was submitted to the Court on October 24, 1997. Oral argument was held February 10, 1998.

3. Sharonda Clark is also referred to in the record as Sharonda White.

4. Life-qualifying a jury is the questioning process that identifies and excludes potential jurors who would be unable to return a sentence of life imprisonment or life imprisonment without parole upon a finding of guilt for First Degree Murder.

844

case must be permitted to pose life-qualification questions during *voir dire.* *Id.* at 735–36, 112 S.Ct. at 2233.

¶ 6 In *LaFevers v. State,* 1995 OK CR 26, 897 P.2d 292, 301 n. 19, *cert. denied,* 516 U.S. 1095, 116 S.Ct. 820, 133 L.Ed.2d 763 (1996), this Court stated that *Morgan* held that the trial court must, at a defendant's request, "inquire sufficiently to discover jurors who would automatically impose the death penalty." This reading of *Morgan* is too narrow. Because *voir dire* is conducted by the trial court in Illinois,[5] the Supreme Court necessarily found that an Illinois trial court must life-qualify prospective jurors when requested by the defense. However, with respect to systems such as Oklahoma's where attorneys may conduct *voir dire,* the holding of *Morgan* is simply that a defendant must be permitted to life-qualify prospective jurors whether the questions are posed by the parties or by the court.

¶ 7 In the instant case, Judge Hopper did not conduct a conventional *voir dire.* Rather, he allowed the attorneys to ask the majority of the questions concerning punishment including the death-qualifying and the life-qualifying questions. As such, defense counsel was allowed to and did ask several questions to determine whether prospective jurors would automatically impose the death penalty upon a finding of guilt. Because Appellant was not denied the right to life-qualify prospective jurors, we find no *Morgan* error.

¶ 8 In his second proposition of error, Appellant claims the trial court erred in sustaining objections to certain questions propounded by defense counsel during *voir dire.* First, Appellant claims the trial court erred when it sustained objections to defense counsel's questions, "[w]ould you want God to judge you based on one day of your life for your entire life" and "[d]o you believe in a judgment day?" Counsel stated in her offer of proof that she asked these questions to find out if the prospective jurors would consider only someone's worst act in determining whether to impose the death penalty or if they would consider all the facts and circum-

stances surrounding Appellant's life. On appeal, Appellant argues the trial court's ruling precluded defense counsel from exploring prospective jurors' willingness to accept and consider mitigating evidence and that this preclusion resulted in the seating of a jury prone to impose the death penalty.

¶ 9 The manner and scope of *voir dire* is within the discretion of the trial court. *E.g., Cannon v. State,* 1995 OK CR 45, 904 P.2d 89, 97, *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996). "The purpose of *voir dire* is to uncover actual and implied bias, enabling counsel to intelligently use peremptory challenges." *Mitchell v. State,* 1994 OK CR 70, 884 P.2d 1186, 1195, *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). When the examination of prospective jurors is sufficiently broad to afford the accused a jury not affected by outside influences, personal interests or bias, a trial court's decision to limit questioning will not be ruled an abuse of discretion. *Walker v. State,* 1994 OK CR 66, 887 P.2d 301, 307, *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995).

¶ 10 We find the questions complained of above do nothing to discern if the prospective jurors would consider the three penalties provided by law, weigh the aggravating and mitigating factors, or follow the instructions of the trial court. A review of the *voir dire* record shows that defense counsel was allowed to ask prospective jurors about the three punishment options, their beliefs about the death penalty, their religious affiliation, their faith's position on the death penalty, whether they would consider mitigating evidence and whether they would follow the trial court's instructions. Because counsel was allowed to ask such questions, we find that Appellant has failed to demonstrate how the excluded questions would have advanced the appropriate inquiry or how the exclusion of the questions resulted in a jury which was not fair and impartial. Accordingly, we find no abuse of discretion.

¶ 11 Second, Appellant claims the trial court improperly limited his ability to question prospective jurors on whether they

5. *Morgan,* 504 U.S. at 722, 112 S.Ct. at 2226.

could consider child abuse as a mitigating factor. "This Court has ruled that a trial judge's refusal to permit *voir dire* inquiry into jurors' views on particular mitigating factors does not constitute an abuse of discretion." *Walker,* 887 P.2d at 307. As in *Walker,* Appellant cites no state or federal case in which the subject of mitigating evidence in a capital case has been found to require a more detailed *voir dire* inquiry than is normally allowed. *Id.*

¶ 12 A review of the *voir dire* record in the present case shows that defense counsel was not so restricted that she was unable either to ascertain juror bias or to intelligently exercise peremptory challenges. Although the trial court sustained objections to several of defense counsel's questions, counsel still explained the concept and weighing process of mitigating evidence to the prospective jurors. Because Appellant's right to an impartial jury was not violated by the trial court's rulings restricting some of defense counsel's proffered questions on the subject of mitigating evidence, this proposition is denied.

¶ 13 In his third proposition of error, Appellant claims the State's use of a peremptory challenge to remove prospective juror Washington from the jury panel was racially motivated and violated Appellant's right of equal protection. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To assert a *Batson* claim the defendant must make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race. *Neill v. State,* 1994 OK CR 69, 896 P.2d 537, 546, *cert. denied,* 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996). After the requisite showing has been made, the burden shifts to the prosecutor to articulate a race neutral explanation related to the case for striking the juror in question. *Neill,* 896 P.2d at 546. The trial court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* On appeal, this Court must analyze the neutrality of the prosecutor's explanation as a legal issue, and relief is warranted only for clear error by the trial court. *Id.* at 547.

¶ 14 In the instant case, prospective juror Washington advised the prosecutor

that her son had been charged in conjunction with a murder case in Tulsa County, but that he "turned State's evidence." She then said he was arrested, but she "wouldn't say he was charged [because] [t]hey told him if he would tell the truth, wouldn't nothing happen to him."

¶ 15 Prior to exercising its third peremptory challenge, the State advised that it anticipated excusing Washington and requested any *Batson* hearing be conducted outside the presence of the prospective jurors. The State did excuse Washington with its third peremptory challenge stating, "[we] thanks (sic) the candor of Mrs. Washington telling us about the prosecution of her son, but I would ask that she be excused." The trial court excused Washington and held a bench conference where defense counsel objected and moved for mistrial. The State responded that it excused Washington because it had prosecuted her son in conjunction with the murder charge she described and for possession of controlled drugs and marihuana. Without making any ruling or comments, the trial court continued the *voir dire* examination. While we find the better practice is to make specific rulings on the record when *Batson* challenges are urged, this record shows the State provided a race neutral explanation for challenging prospective juror Washington and the trial court did not err in excusing her. Therefore, this proposition of error must fail.

## ISSUES RELATING TO FIRST STAGE

¶ 16 In his fourth proposition of error, Appellant claims it was reversible error to admit Detective Fultz' statement that he did not believe Appellant's version "of what had occurred." He maintains such opinion usurped the jury's province in violation of *McCarty v. State,* 1988 OK CR 271, 765 P.2d 1215, 12 O.S.1991, § 2701 and 12 O.S.1991, § 2403.

¶ 17 At trial, defense counsel objected to the admission of Fultz's opinion claiming it was irrelevant. "Where a defendant makes a specific objection at trial no different objections will be considered on appeal." *Romano v. State,* 1995 OK CR 74, 909

P.2d 92, 109, *cert. denied,* —— U.S. ——, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). By failing to object at trial that Fultz' opinion was improper opinion evidence, misleading or more prejudicial than probative, Appellant has waived the issue and this Court will only review the present challenges for plain error. *Romano,* 909 P.2d at 109.

¶ 18 In *Romano,* this Court addressed the propriety of opinion evidence on ultimate issues and stated:

> Opinion evidence on ultimate issues is generally admissible. 12 O.S.1991, § 2704. However, the "otherwise admissible" language of § 2704 must be read in context with 12 O.S.1991, §§ 2403, 2701, 2702. While expert witnesses can suggest the inferences which jurors should draw from the application of specialized knowledge to the facts, opinion testimony which merely tells a jury what result to reach is inadmissible. (citations and footnotes omitted)

*Id.*

¶ 19 In the instant case, the prosecutor did not formally qualify Detective Fultz as an expert, but did ask Fultz about his twenty-two year career as a police officer and his specialized training. The prosecutor then played a tape recording of a conversation between Appellant and Detective Fultz in which Appellant claimed he killed Clark in self-defense. Throughout the tape Appellant asked Fultz if Fultz believed him and Fultz responded "pretty much" or "anything is possible." After the tape was played, the prosecutor asked Fultz:

> Q. Based on what the defendant was telling you [during the recorded conversation] and based upon what you were seeing from the scene, what opinions did you form about what the defendant was telling you?

[Defense counsel's relevancy objection was overruled.]

> A. I did not believe Mr. Cannon's version of what had occurred.

(Tr. 764–65)

¶ 20 We have reviewed the record and find that Fultz' opinion was not improper opinion testimony on an ultimate issue since it did not tell the jury what result to reach. Fultz' testimony was based upon his exami-nation and investigation of the crime scene. In his testimony Fultz identified numerous photographs of the crime scene and described the condition of the apartment. Fultz then told the prosecutor that Appellant's version of what had occurred was not consistent with his investigation. At no time did Fultz say that Appellant did not act in self-defense, rather, he said Appellant's rendition of the events was not consistent with Fultz' conclusions based upon the physical evidence. His answer was based on reasonable inferences drawn from his specialized knowledge in homicide investigation.

¶ 21 Even if we construed Fultz' statement as an improper opinion telling the jury what to find, defense counsel attacked Fultz on cross-examination because he could not produce any evidence of who started the fight, who had the knife first or any statements of the victim to disprove Appellant's self-defense claim. Defense counsel's attempts to expose the basis of Fultz' conclusion on cross-examination cured any error which could have resulted. *Id.* at 110.

¶ 22 In his fifth proposition of error, Appellant argues that a statement made by Jacque Pepper was inadmissible hearsay that was so prejudicial his conviction must be reversed. During trial the prosecutor asked Jacque Pepper, one of the victim's friends, how she met Appellant. Pepper responded, "Sharonda called me and she was afraid. She told me she was scared." Defense counsel objected and the trial court sustained the objection. Defense counsel then moved for a mistrial which the trial court denied. Thereafter, Pepper testified that Clark forced Appellant to introduce himself to Pepper after Clark called Pepper "to come and take [Clark's] children away from the home."

¶ 23 A review of the record shows the trial court erred in sustaining the objection. Although Pepper's testimony concerning Clark's statements was hearsay, such statements are admissible under an exception to the hearsay rule to show a victim's state of mind. *See* 12 O.S.1991, § 2803(3). *See also Long v. State,* 1994 OK CR 60, 883 P.2d 167, 173, *cert. denied,* 514 U.S. 1068, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1995). In this case

the evidence showed that Appellant moved in with Clark in the latter part of January 1995 after he escaped from prison. Sometime after Appellant moved in but before Clark's death on February 3, 1995, Clark called Pepper because she was scared and asked Pepper to come and take her children. The inference from Pepper's testimony is that Clark was afraid of Appellant and feared for her children's safety. Such state of mind evidence is relevant in a case such as this where the accused claims the victim was the aggressor.[6] Because the trial court sustained Appellant's objection and this admissible evidence was not developed, Appellant cannot now complain on appeal. Accordingly, this proposition is denied.

¶ 24 In his sixth proposition of error, Appellant claims the trial court erred in admitting three photographs [7] and nine slides into evidence because the exhibits were cumulative and gruesome. State's Exhibits 5 and 18 depict the victim from different angles as she was found in the bathroom. State's Exhibit 33 depicts a police officer holding the victim's right hand to show the incise wound at the base of the victim's thumb that almost severed it. The nine slides depict the different wounds sustained by the victim.

¶ 25 The admissibility of photographic evidence is a matter within the trial court's discretion whose ruling will not be reversed unless an abuse of discretion is proved. *Conover v. State*, 1997 OK CR 6, 933 P.2d 904, 913. Photographs and slides are admissible if their content is relevant and their probative value is not substantially outweighed by the danger of unfair prejudice. *Conover*, 933 P.2d at 913. *See also* 12 O.S. 1991, § 2403. "When the probative value of photographs is outweighed by their prejudicial impact on the jury—that is the evidence tends to elicit an emotional rather than rational judgment by the jury—then they

should not be admitted into evidence." *Conover*, 933 P.2d at 913.

¶ 26 As stated above, Exhibit Nos. 5 and 18 depict the victim as she was found at the scene. The photographs corroborate the testimony of the investigating officer. The slides corroborate the testimony of the medical examiner regarding the various wounds suffered by the victim. As we said in *Conover*, "[t]he probative value of photographs of murder victims can be manifested numerous ways including showing the nature, extent, and location of wounds, depicting the crime scene, and corroborating the medical examiner's testimony." *Id.*

¶ 27 Even though the photographs and slides in the present case were relevant, we must now weigh the probative value of the evidence against its prejudicial effect. *Id.* This Court recognizes that there is a point in the display of relevant photographs where the photographs are so duplicative that a needless repetition can inflame the jury and result in error. *Id.* "The burden is on the Appellant to prove that he was injured by the error." *Id.*

¶ 28 Although Exhibits 5 and 18 both show the victim at the scene, they were neither too gruesome nor repetitive to prejudice Appellant since they show the victim as found and from different angles. *Id.* at 914. A review of the slides shows they were somewhat duplicative. However, the presentation of the slides was not so prejudicial since the slides were shown only during the testimony of the medical examiner. *Id.*

¶ 29 Further, there was no error in the admission of Exhibit 33 which showed the officer displaying the incise wound to the victim's hand. The officer's assistance was required to show the nature and extent of the wound which was not visible from other photographs of the victim. The evidence was relevant to rebut Appellant's claim of self-defense as such wounds are normally defensive in nature. Because each of the photo-

6. This Court has found similar evidence relevant in cases where one spouse kills the other spouse. *E.g., Hooker v. State*, 1994 OK CR 75, 887 P.2d 1351, 1360, *cert. denied*, 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995). Although Appellant and Clark were not married, the same ratio-nale applies since they were living together in what the evidence indicated was an intimate relationship.

7. State's Exhibit Nos. 5, 18 and 33.

graphs and slides was properly admitted into evidence, we find Appellant was not denied a fair trial. Therefore, this proposition of error is denied.

¶ 30 In his seventh proposition of error, Appellant claims the court reporter's failure to record and transcribe the reading of the trial court's instructions in both stages of trial undermines his right to appeal and the ability of this Court to conduct its mandatory review. Appellant correctly states that it is this Court's position that a complete record should be transcribed in all proceedings in which the death penalty is imposed. However, failure to do so does not warrant automatic reversal. *See Parker v. State,* 1994 OK CR 56, 887 P.2d 290, 294; *Allen v. State,* 1994 OK CR 13, 871 P.2d 79, 87, *cert. denied,* 513 U.S. 952, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994). If alternate means exist for this Court to make a determination without the complete transcription, it will do so and rule accordingly. *Allen,* 871 P.2d at 87.

¶ 31 Appellant complains that the actual reading of the instructions was not recorded or transcribed and that the written instructions in the original record cannot substitute for the lack of transcription. Relying on *Page v. State,* 1958 OK CR 105, 332 P.2d 693, 695–96, in which this Court noted that providing the jury with written instructions was not mandatory but was permissive under 22 O.S.1951, § 893, Appellant argues the actual binding instructions are those read to the jury by the trial court in open court. He maintains that neither he nor this Court can rely on the written instructions contained in the original record as a substitute since we can only speculate on whether the trial court read the instructions as written. We find Appellant's reasoning is skewed. Simply because a trial court may choose to give writ-

ten instructions to the jury does not mean that the instructions differ or that the written instructions do not mirror the oral instructions. There is nothing in this record to suggest the trial court deviated from the written instructions, i.e., the attorneys did not approach the bench and argue the judge had deviated or misstated the instructions. These same instructions were given to the jurors to read and review during deliberations. Because we can determine from this record what instructions the trial court administered to the jury, we find that Appellant's ability to raise issues about the instructions and our review is not impeded. *Parker,* 887 P.2d at 294–95. This proposition of error is therefore denied.

¶ 32 In his eighth proposition of error, Appellant claims the trial court erred in refusing to administer OUJI–CR–816,[8] the "exculpatory statement" instruction. Because the record reflects that Appellant offered written instructions, but specifically stated he had no objections to the instructions the court intended to give, we will review this claim for plain error. *Neill,* 896 P.2d at 554.

¶ 33 "An exculpatory statement is one regarding a tangible factual matter capable of specific disproof which tends to clear a defendant from guilt or justify his actions." *Rogers v. State,* 1995 OK CR 8, 890 P.2d 959, 970, *cert. denied,* 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995). Appellant claims the trial court erred in failing to give OUJI–CR–816 after hearing his tape recorded statement claiming Clark came at him with a knife, tried to stab him and he lost control. As the victim was dead, the State could bring forth no direct evidence to disprove Appellant's claim that Clark was the initial aggressor or that he lost control. However, the State presented circumstantial evidence re-

---

8. OUJI–CR–816 provides:

An exculpatory statement is defined as a statement that tends to clear a defendant from alleged guilt, or a statement that tends to justify or excuse his/her actions or presence.

Where the state introduces in connection with a confession or admission of a defendant an exculpatory statement which, if true, would entitle him/her to an acquittal, he/she must be acquitted unless such exculpatory statement has

been disproved or shown to be false by other evidence in the case. The falsity of an exculpatory statement may be shown by circumstantial as well as by direct evidence.

A statement is exculpatory within the meaning of this instruction only if it concerns a tangible, affirmative, factual matter capable of specific disproof. A statement is not exculpatory within the meaning of this instruction if it merely restates the defendant's contention of innocence.

futing Appellant's statement. This claim is similar to the claim rejected in *Rogers*, 890 P.2d at 971. Based on the reasoning in *Rogers*, we find the trial court did not err in failing to give OUJI–CR–816. *Id.*

¶ 34 In his ninth proposition of error, Appellant claims the trial court erred in administering first degree heat of passion manslaughter instructions that deviated from the Oklahoma Uniform Jury Instructions—Criminal (hereinafter OUJI–CR). Because Appellant stated he had no objections to the manslaughter instructions the court intended to administer, we will review this claim for plain error. *Neill*, 896 P.2d at 554.

¶ 35 First, Appellant complains that the fifth element of Instruction No. 16 varied from OUJI–CR–455 which lists the elements of heat of passion manslaughter. The fifth element of OUJI–CR–455 reads, "when performing the conduct which caused the death, defendant was in a heat of passion." The court's instruction provided, "[d]efendant was in a heat of passion and said act (sic) perpetrated without a design to effect death." Appellant maintains this deviation "added an element that the Defendant's action must be without a design to effect death, which added one more hoop for the jury to jump through before it could convict for the noncapital crime rather than the capital crime." *Appellant's Brief* at 40.

¶ 36 In *Flores v. State*, 1995 OK CR 9, 896 P.2d 558, 560, *cert. denied*, 516 U.S. 1002, 116 S.Ct. 548, 133 L.Ed.2d 450 (1995), this Court stated that the uniform instructions shall be used unless they do not accurately state the law. *See also* 12 O.S. 1991, § 577.2. "However, deviation from the uniform instructions does not require automatic reversal." *Flores*, 896 P.2d at 560. This Court reviews the instructions to determine whether the instruction at issue fairly and accurately states the applicable law. *Id.* "Even when error is committed, reversal is not required unless such error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statu-

tory right." *Id. See also* 20 O.S.1991, § 3001.1.

¶ 37 Title 21 O.S.1991, § 711 defines heat of passion manslaughter as follows:

Homicide is manslaughter in the first degree in the following cases:

2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

¶ 38 A review of the statute and the instruction at issue shows the instruction sufficiently stated the applicable law. Although the trial court should have used the uniform instruction, the error did not result in a miscarriage of justice or deprive Appellant of a statutory or constitutional right as the jury was sufficiently instructed on the elements of heat of passion manslaughter. Because the instructions, taken as a whole, fairly and accurately state the applicable law, we find no plain error. *Cannon*, 904 P.2d at 98.

¶ 39 Second, Appellant complains about two typographical errors found in the language of Instruction 20 which defined "passion." In that instruction "overpowering" was misspelled as "everpowering" and "must" was misspelled as "just." A review of Instruction 20 shows that these two typographical errors did not substantively alter any legal standard and did not render the instruction incomprehensible or confusing. Because the instruction adequately informed the jury of the definition of passion, we again find no plain error.

¶ 40 In his tenth proposition of error, Appellant argues the trial court's instructions on self-defense were so confusing that reversal is warranted. Specifically, Appellant claims the trial court erred when it failed to select the one applicable alternative from the three contained in the bracketed sections of OUJI–CR–746 and 748.[9] As stat-

---

9. Instruction No. 12 stated:
 Self-defense is permitted a person solely because of necessity. Self-defense is not available to a person who was the aggressor; provoked

another with the intent to cause the altercation or voluntarily entered into mutual combat, no matter how great the danger to personal security

ed above Appellant did not object to the instructions as given, therefore we will review for plain error. *Neill,* 896 P.2d at 554.

¶ 41 This Court has repeatedly held that it will not disturb a verdict if the instructions, taken as a whole, accurately state the applicable law. *E.g., Cannon,* 904 P.2d at 98. We have reviewed the instructions at issue and find they are not so confusing that a jury would have been misled on the law of self-defense. The alternatives were set apart with appropriate punctuation making the instructions understandable by a lay juror. Accordingly, this proposition is denied.

## ISSUES RELATING TO SECOND STAGE

¶ 42 In his eleventh proposition of error, Appellant argues he was not provided with adequate and timely notice of the proposed victim impact evidence and that the trial court erred in admitting victim impact evidence that was improper and prejudicial. Because Appellant objected on both grounds, this issue has been properly preserved for review.

¶ 43 First, Appellant complains he was not provided with timely and adequate notice of the proposed victim impact evidence. In the instant case, the State filed a notice ten days prior to trial stating it would be offering "victim impact statements containing information about the financial, emotional, psychological, and physical effects that the murder of Sharonda White has had on each victim and member of her immediate family. These victim impact statements will include information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." No further specifics were given on who would testify or what they would say. The

day the State intended to call its victim impact witnesses, it filed a document entitled "In Camera Review of Victim Impact Evidence" detailing who would testify and the substance of their testimony. The trial court reviewed the proposed evidence *in camera* and concluded it was proper and could be admitted. Defense counsel objected.

¶ 44 In *Cargle v. State,* 1995 OK CR 77, 909 P.2d 806, 828, *cert. denied,* —— U.S. ——, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), we held the State must file a notice of intent to produce victim impact evidence detailing the evidence it seeks to introduce. Prior to offering any victim impact evidence, the trial court should hold an in-camera hearing to determine the admissibility of the proposed evidence pursuant to 12 O.S.1991, § 2403. *Cargle,* 909 P.2d at 828. The State is limited to the evidence listed in its notice and no other victim impact evidence should be admitted. *Id.*

¶ 45 Here, defense counsel acknowledged she had received notice ten days before trial that the State would offer one or more of the victim's family members to testify about the impact of Clark's death on the family. The family members had been endorsed as witnesses. However, defense counsel had no way of knowing from the State's initial notice who would testify or what that testimony would be in the penalty phase of trial. In *Ledbetter v. State,* 1997 OK CR 5, 933 P.2d 880, 894, this Court condemned a similar situation where the defense did not receive a copy of the victim impact statement until the second stage of trial was beginning.[10] Although the notice in the instant case was filed timely, the notice provided in the instant case was inadequate because it failed to apprise the defense of the proposed victim impact evidence.[11] Because

became during the altercation unless the right of self-defense is reestablished.
Instruction No. 13 stated:
A person who was not the aggressor, did not provoke another with intent to cause an altercation, did not voluntarily enter into mutual combat has no duty to retreat, but may stand firm and use the right of self-defense.

10. We take this opportunity to reiterate our holding in *Ledbetter* that when properly requested

and ordered by the court, victim impact evidence must ordinarily be turned over to the opposing party at least ten (10) days before trial pursuant to 22 O.S.Supp.1994, § 2002(D). *Id.*

11. We note had the State filed its pleading entitled In Camera Review of Victim Impact Notice which listed its proposed witnesses and a synopsis of their testimony ten days before trial, there would have been no error in this case.

the issue of adequate notice implicates the Due Process Clause, we must determine if the lack of adequate notice in this case was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

¶ 46 Appellant claims he could not intelligently exercise his peremptory challenges due to the lack of adequate notice which also infringed on his right to an impartial jury. He further argues the lack of adequate notice hindered his ability to investigate unfavorable evidence and prepare a defense or rebuttal. A review of the victim impact evidence admitted in the instant case shows that it was within the limits set by this Court. Clark's mother and step-father testified that Clark's death affected her two young children in the form of bed wetting, loss of sleep and mood changes. They also described the effects of Clark's death on them and their other children. Such feelings of loss and mood changes described by Clark's parents are not uncommon and are associated with most unexpected tragic deaths. It is therefore difficult for us to conclude that the lack of specific notice prevented Appellant from exercising his peremptory challenges intelligently or impaneling an impartial jury. Even though Appellant did not know specifically what the victim impact witnesses would say, nothing prevented him from asking jurors general questions about the prospective jurors' opinions concerning general victim impact evidence. Further, there is no evidence in this record that Appellant was hindered in his preparation to defend against the victim impact evidence due to the lack of notice. Accordingly, we find that the lack of adequate notice was harmless beyond a reasonable doubt in this case.

■■■■ ¶ 47 Next, Appellant complains that it was error to admit Clark's step-father's testimony that he met the victim when she was three years old, that he wanted to be her father, that he remembered the first time she called him "daddy," that he took her "everywhere," that he had a loving, close and protective relationship with her and that since her death he had a recurrent dream in which Clark called out to him to help her as she was being killed. He also claims it was error pursuant to 12 O.S.1991, § 2403 to admit Clark's mother's testimony that they gave Clark's oldest daughter a barbie jeep for Christmas and told her it was from her mother because she had asked her mother for one.

¶ 48 A review of the contested evidence shows the brief description of Clark's relationship with her step-father was introduced to show how the relationship developed and that Clark's death profoundly affected her step-father due to the closeness of the relationship. Although such evidence deals more with the emotional aspect of Clark's death, the evidence was admissible since it was probative of the emotional aspect of Clark's death on her family and was not substantially outweighed by the danger of unfair prejudice. The testimony concerning the recurrent dream showed the psychological impact of Clark's murder on her step-father which is permitted by the statute. As such this evidence was properly admitted.

¶ 49 The admission of the testimony concerning the Christmas gift to Clark's oldest child and her reaction to the gift was error because such testimony had little probative value of the impact of Clark's death on her family and was more prejudicial than probative. However, we find this error did not contribute to the sentence rendered given the strength of the State's case in aggravation and the trial court's proper instruction on the use of victim impact evidence. Accordingly, this proposition is denied.

■■■■ ¶ 50 In his twelfth proposition of error, Appellant claims the admission of a videotape of the crime scene (State's Exh. 50) and two photographs of the victim at the scene (State's Exhs. 48 & 49) were improperly admitted in the second stage because they were cumulative and prejudicial. Appellant also claims the admission of a videotape of the crime scene of his prior violent felony (State's Exh. 47) was error.

■■■■ ¶ 51 In the instant case the State alleged that the murder was especially heinous, atrocious or cruel. To prove this aggravating circumstance, the State had to introduce competent evidence indicating the victim's death was preceded by torture or

serious physical abuse, which can include the infliction of either great physical anguish or extreme mental cruelty. *Powell v. State,* 1995 OK CR 37, 906 P.2d 765, 779, *cert. denied,* 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996). In *Powell,* 906 P.2d at 780, this Court upheld the introduction of gruesome photographs to prove a murder was especially heinous, atrocious or cruel because they showed the decedent's death was preceded by torture or serious physical abuse. As in *Powell* the videotape of the crime scene and the two photographs of the deceased in this case were relevant and helped to prove Clark suffered abuse prior to her death. Because the medical examiner opined that Clark was not rendered immediately unconscious from her injuries, the photographs were relevant to show Clark's death was preceded by serious physical abuse. *Id.*

¶ 52 We must reiterate that such evidence is not probative of whether a victim was conscious during an attack which is the critical inquiry in determining whether a murder was especially heinous, atrocious or cruel. *Id.* The probative value of such evidence is slight in light of its gruesome nature. *Id.* We caution prosecutors to select their visual exhibits carefully and to refrain from admission of repetitive photographs or videotapes. However, because we find the probative value of these exhibits outweighed their prejudicial effect, we must reject Appellant's proposition of error.

 ¶ 53 Appellant also claims the trial court erred in admitting a videotape of the crime scene where Appellant attacked Awanna Simpkins. As a result of this attack, Appellant plead guilty to assault and battery with intent to kill. Because of this prior assault and other violent criminal conduct, the State alleged that Appellant constituted a continuing threat to society. To prove "continuing threat," the State had to show Appellant had a pattern of criminal conduct that would likely continue in the future. *Charm v. State,* 1996 OK CR 40, 924 P.2d 754, 762, *cert. denied,* —— U.S. ——, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). At trial the State called Awanna Simpkins to testify about the assault. The State then introduced a videotape of the crime scene to explain and cor-

roborate her testimony. A review of the videotape shows that it was relevant to show Appellant's prior criminal conduct in order to establish a pattern of violent conduct that would likely continue in the future. The probative value of the videotape was not outweighed by a danger of unfair prejudice and was properly admitted. Therefore, this proposition is denied.

 ¶ 54 In his thirteenth proposition of error, Appellant argues that the aggravating circumstance, the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony, cannot apply in his case because he was not serving his sentence since he was on escape status. He claims applying the aggravator in such an instance would render the aggravator vague and overbroad.

¶ 55 In *Duckett v. State,* 1995 OK CR 61, 919 P.2d 7, 26, *cert. denied,* —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997), this Court rejected this identical argument. However, Appellant maintains *Duckett* is not binding since it is a plurality opinion. A review of the special votes filed in *Duckett* shows that this holding of the opinion was not in dispute. *Duckett,* 919 P.2d at 27–28. We find *Duckett* is a clear statement of the law on this issue and is dispositive. Accordingly, this proposition is denied.

 ¶ 56 In his fourteenth proposition of error, Appellant argues it is reversible error to use one former felony conviction to support more than one aggravating circumstance. *U.S. v. McCullah,* 76 F.3d 1087, 1111 (10th Cir.1996). In this case the State introduced evidence of Appellant's former felony conviction for assault and battery with intent to kill to prove Appellant had a prior violent felony, that he constituted a continuing threat to society and that he was serving a sentence of imprisonment at the time of the murder.

¶ 57 This Court has held that the aggravating circumstances of "prior violent felony" and "continuing threat" are not duplicative. *Pickens v. State,* 1993 OK CR 15, 850 P.2d 328, 336, *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Woodruff v. State,* 1993 OK CR 7, 846 P.2d 1124, 1146,

*cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993). Further, this Court has held that it is not error to use the same evidence to support two aggravating circumstances. *Medlock v. State,* 1994 OK CR 65, 887 P.2d 1333, 1350, *cert. denied,* 516 U.S. 918, 116 S.Ct. 310, 133 L.Ed.2d 213 (1995); *Allen,* 871 P.2d at 100–101. Because these aggravators address different aspects of Appellant's conduct and one can be found without necessarily finding the others, there is no double counting of aggravating factors such as that condemned in *McCullah.* Therefore, this proposition is denied.

¶ 58 In his fifteenth proposition of error, Appellant claims the trial court erred in admitting evidence of unadjudicated bad acts to prove he constituted a continuing threat to society. Appellant claims findings of continuing threat are unreliable because juries are not required to first find the defendant committed the unadjudicated offense beyond a reasonable doubt or by a preponderance of the evidence. This Court has consistently rejected similar claims. *Douglas v. State,* 1997 OK CR 79, 951 P.2d 651, 675–76; *Paxton v. State,* 1993 OK CR 59, 867 P.2d 1309, 1321–22, *cert. denied,* 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). The law is settled and we find no need to revisit this issue at this time.

¶ 59 In his sixteenth proposition of error, Appellant claims the trial court erred in instructing the jury on mitigating evidence. First, Appellant contends the trial court erred in rejecting a proposed instruction specifying extreme mental or emotional disturbance as a mitigating circumstance because there was evidence to support it.[12] He points out that, although the court rejected this proposed mitigating circumstance, it was listed as a mitigating circumstance in the trial judge's report. Appellant claims relief is warranted because this error was compounded by the trial court's failure to list as mitigating circumstances that Appellant voluntarily contacted and cooperated with law enforcement, that Appellant had shown remorse, that the victim was a participant in Appellant's homicidal conduct or consented to the homicidal act, the murder was committed under circumstances which Appellant believed provided a moral justification or extenuation of his conduct and that Appellant did not appreciate the criminality of his conduct at the time of the murder due to mental disease. Because Appellant objected to the trial court's refusal to administer his requested instructions, this issue is properly before this Court.

¶ 60 Appellant relies on *Ledbetter,* 933 P.2d at 898, in which this Court held the trial court erred in rejecting an identical proposed instruction specifying the defendant's emotional disturbance as a mitigating factor when it was requested to do so, when such evidence constituted a substantial portion of the defendant's cross-examination of state's witnesses and the trial court listed emotional disturbance as a mitigating factor in its trial report. This error combined with the admission of improper victim impact evidence caused this Court to find the error not harmless. *Id.* at 902.

¶ 61 The instant case is distinguishable from *Ledbetter* in that Appellant's emotional disturbance was only mentioned briefly by his mother during her testimony and by Appellant in his tape recorded statement in first stage. Appellant's emotional state at the time of the murder was not the focal point of the defense's mitigation case. Further, this case does not suffer from the egregious victim impact errors found in *Ledbetter.* As such this case is more like *Brown v. State,* 1994 OK CR 12, 871 P.2d 56, 74, *cert. denied,* 513 U.S. 1003, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994), in which this Court found the trial court did not err in failing to list the defendant's emotional disturbance as a mitigating factor. Because the jury rejected the defendant's heat-of-passion manslaughter claim, the *Brown* court found it unlikely that the

---

12. Appellant submitted the following proposed instruction to the court:

You are instructed that the mitigating circumstance that the Defendant was under the influence of extreme mental and/or emotional disturbance is applied to a person who while not insane, has more than the emotion of an average man. It applies to the person who, while legally answerable for his actions, may be deserving of some mitigation of sentence because of his mental state. (O.R. 259)

jury would have considered the defendant's emotional disturbance again in second stage. Given that the jury in *Brown* was instructed that it was to determine what mitigating circumstances were present and was free to consider Brown's emotional disturbance, this Court found the trial court did not err in failing to list emotional disturbance in the list of mitigating evidence. *Id.*

¶ 62 As in *Brown,* the jury rejected Appellant's heat-of-passion manslaughter defense. Further, the jury was properly instructed that it was to determine what mitigating circumstances were present and consider them accordingly. Because the jury was not precluded from considering Appellant's emotional state or any other potentially mitigating circumstance, we find the failure to include emotional disturbance or any of the other omitted factors in the list of mitigating circumstances harmless beyond a reasonable doubt.

¶ 63 Second, Appellant claims the mitigation instructions administered in this case presented a risk the jury was unconstitutionally precluded from considering all relevant mitigation. He argues that by not inserting language to the effect the sentencer can consider "any mitigating circumstances," the court improperly channeled the sentencer's discretion to consider mitigation. He also argues that by prefacing the list of specific proposed mitigating circumstances with the words "[e]vidence has been offered" implied that there was no evidence to support any other mitigating evidence the jurors might believe existed. This argument was rejected in *Ledbetter,* 933 P.2d at 898–99 and there is no need to revisit it at this time.

¶ 64 Lastly, Appellant complains the second-stage instructions permitted the jury to decline consideration of mitigating evidence. Again this argument was rejected in *Ledbetter,* 933 P.2d at 899 and there is no need to revisit it again.

¶ 65 In his seventeenth proposition of error, Appellant argues the trial court erred in failing to instruct the jury on the burden of proof regarding the "prior violent felony conviction" aggravator. Appellant cites *Battenfield v. State,* 1991 OK CR 99, 826 P.2d 612, 614 (Order Denying Rehearing)

and *Cooper v. State,* 1991 OK CR 54, 810 P.2d 1303, 1306 and argues the jury must be instructed that the State must prove the prior conviction beyond a reasonable doubt in order to prove the "prior violent felony" aggravator. Because Appellant failed to object or request such an instruction, we will review for plain error.

¶ 66 In *Cooper,* 810 P.2d at 1306, this Court reviewed the sufficiency of the evidence supporting the defendant's prior felony convictions. The *Cooper* court held the State must introduce other facts and circumstances in addition to a Judgment and Sentence with the defendant's name in order to prove the existence of a prior felony conviction beyond a reasonable doubt. *Id.* In *Battenfield,* 826 P.2d at 614, this Court reviewed the appellant's claim that the State failed to prove he was the person listed on the Judgment and Sentence introduced to prove the "prior violent felony" aggravator. The *Battenfield* court found the evidence sufficient based on the "uniqueness" of the appellant's name, but stressed the need to introduce other evidence to prove the accused is the person listed in the Judgment and Sentence. *Id.*

¶ 67 We find Appellant's argument unpersuasive inasmuch as neither of these cases discusses burden of proof instructions. The trial court in the instant case instructed the jury that the aggravating circumstances must be proven beyond a reasonable doubt. Further, the State introduced a certified copy of a judgment and sentence on a plea of nolo contendere showing Appellant was found guilty of Assault and Battery with Intent to Kill. Awana Simpkins testified that Appellant raped and beat her, that she aided in the prosecution and that Appellant was convicted of assault and battery with intent to kill. Because the trial court properly instructed the jury and the evidence was sufficient to prove beyond a reasonable doubt that Appellant had a prior violent felony conviction, we find no error.

¶ 68 In his eighteenth proposition of error, Appellant claims the trial court erred in failing to instruct on and admit evidence concerning the meaning of life without parole to rebut the continuing threat aggravator.

*Simmons v. South Carolina,* 512 U.S. 154, 171, 114 S.Ct. 2187, 2198, 129 L.Ed.2d 133 (1994) (holding State may not "create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole.") Appellant claims the trial court's decision violated his due process and Eighth Amendment rights.

¶ 69 In the instant case the trial court sustained the State's objection when the defense attempted to call Steve Strode, an administrator at the Oklahoma Department of Corrections, to testify that life without parole in Oklahoma means a defendant would serve his natural life in a maximum security prison. Proposed instructions regarding parole ineligibility were also rejected. In *Hamilton v. State,* 1997 OK CR 14, 937 P.2d 1001, 1012, *cert. denied,* —— U.S. ——, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998), this Court rejected a similar claim based on *Simmons* finding *Simmons* was distinguishable and failure to define life without parole is not error. Based on *Hamilton,* we find the failure to admit evidence on or instruct on the meaning of life without parole was not error.

 ¶ 70 In his nineteenth proposition of error, Appellant asserts the trial court erred in failing to instruct the jury that findings of mitigating circumstances need not be unanimous. He maintains that the instructions administered when read as a whole "probably" led the jury to perceive a requirement of unanimity on mitigation. *Appellant's Brief* at 81. We have previously rejected such arguments because we are not persuaded by speculation that the jury would read into the instruction on mitigating circumstances a requirement of unanimity merely because the instruction on aggravating circumstances had such a requirement. *Douglas,* 951 P.2d at 680; *Hamilton,* 937 P.2d at 1013. Further, we find the victim impact instruction would not cause the jury to find a unanimity requirement for mitigating evidence. Without facts to support this speculation, we find no merit in this argument. *Douglas,* 951 P.2d at 680.

¶ 71 In his twentieth proposition of error, Appellant argues the anti-sympathy instruc-tion that was incorporated into the second stage instructions prevented the jury from giving effect to valid mitigation. *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). We have consistently rejected this argument and there is no need to revisit the issue at this time. *E.g., Hamilton,* 937 P.2d at 1013.

¶ 72 In his twenty-first proposition of error, Appellant claims the "especially heinous, atrocious or cruel" aggravator is still being applied and reviewed by this Court in an unconstitutional manner. We have consistently rejected this claim since our holding in *Stouffer v. State,* 1987 OK CR 166, 742 P.2d 562, 563, *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), which limited the aggravator to those instances of death which are preceded by torture or serious physical abuse. *E.g., Mollett v. State,* 1997 OK CR 28, 939 P.2d 1, 14, *cert. denied,* —— U.S. ——, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998). A review of the record shows the jury in the present case was sufficiently instructed regarding the definition of the phrase "especially heinous atrocious or cruel." Accordingly, we find the jury's discretion was properly channeled and no error occurred. *Mollett,* 939 P.2d at 14.

¶ 73 In his twenty-second proposition of error, Appellant argues the continuing threat aggravator is vague and overbroad in violation of the Eighth and Fourteenth Amendments. This argument has been consistently rejected by this Court. *E.g., Bryan v. State,* 1997 OK CR 15, 935 P.2d 338, 365, *cert. denied,* —— U.S. ——, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). We further note the Tenth Circuit has recently found Oklahoma's continuing threat aggravator constitutional while noting the contrary decision in *Williamson v. Reynolds,* 904 F.Supp. 1529, 1569–71 (E.D.Okl.1995). *Nguyen v. Reynolds,* 131 F.3d 1340, 1352–53 (10th Cir.1997).

 ¶ 74 In his twenty-third proposition of error, Appellant claims he was denied a "significant" statutory right when the jury foreman failed to sign the verdict form which listed the aggravating circumstances unanimously found by the jury. 21 O.S.1991, § 701.11. Because the aggravating circum-

stances verdict form failed to provide a signature line, Appellant argues that the jury could have erroneously signed the death verdict form in its attempt to follow the instruction to check and sign any aggravating circumstances found by the jury. Such failure, he claims, could have resulted in a failure to fully consider the mitigating evidence and led to an erroneous recommendation of the death penalty. *Franks v. State*, 1981 OK CR 138, 636 P.2d 361, 366-67, *overruled on other grounds, Brown v. State*, 1987 OK CR 181, 743 P.2d 133, 138.

¶ 75 When the jury foreman read the verdict, he stated:

> We the jury impaneled and sworn in the above entitled cause, do upon our oaths unanimously find the following statutory aggravating circumstance or circumstances, as shown by the circumstance or circumstances checked:
>
> Defendant was previously convicted of a felony involving the use or threat of violence to the person.
>
> The murder of the victim was especially heinous atrocious and cruel.
>
> The murder was committed by a person while serving a sentence of imprisonment on conviction of a felony.
>
> The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society....
>
> We the jury impaneled and sworn in the above entitled cause do upon our oaths having heretofore found the defendant Jemaine Monteil Cannon guilty of Murder in the First Degree, fix his punishment at death.

(Tr. 1234)

¶ 76 The jury was asked if their verdict was unanimous and each member was polled. Because the record in this case is clear that the jury unanimously found the checked aggravating circumstances and based on such finding recommended death, we find the foreman's failure to sign the aggravating circumstance verdict form harmless beyond a reasonable doubt.

¶ 77 In his final proposition of error, Appellant asks this Court to consider the cumulative effect of the alleged errors and grant relief even if the individual errors do not, in themselves, justify such action. As no error occurred which requires reversal, modification or other relief, this proposition of error is denied. *Mollett*, 939 P.2d at 15.

## MANDATORY SENTENCE REVIEW

¶ 78 Pursuant to 21 O.S.1991, § 701.13(C), we must now determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.1991, § 701.12. As noted above sufficient evidence existed to support the four aggravating circumstances alleged by the State: Appellant was previously convicted of a felony involving the use or threat of violence to the person; the murder was especially heinous, atrocious or cruel; Appellant committed the murder while serving a sentence of imprisonment on conviction of a felony; and Appellant constitutes a continuing threat to society. In mitigation Appellant presented evidence of his young age (24), his loving relationships with his family, his childhood history of physical, mental and emotional abuse and his lack of a threat to society in the penitentiary. After carefully weighing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances outweigh the mitigating evidence and that the sentence of death is factually substantiated and appropriate. We further find no error which warrants reversal or modification. Accordingly, Appellant's conviction and sentence are AFFIRMED.

CHAPEL, P.J., and LUMPKIN and JOHNSON, JJ., concur.

LANE, J., concurs in result.