FILED
United States Court of Appeals
Tenth Circuit

September 11, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES L. DEROSA,

        Petitioner - Appellant,

v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,

        Respondent - Appellee.

No. 10-7084
(D.Ct. No. 6:05-CV-00213-JHP-SPS)

**ORDER**

Before **BRISCOE**, Chief Judge, **KELLY**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **TYMKOVICH**, **GORSUCH**, **HOLMES**, and **MATHESON**, Circuit Judges.

This matter is before the court on petitioner's *Petition for Rehearing En Banc and/or Panel Rehearing*. We also have a response, as well as a reply. The original panel has considered the request for panel rehearing, as well as the other pleadings on file, and that request is denied.

The entire petition, as well as the response and reply, were also circulated to all the judges of the court who are in regular active service. A poll was called, and a majority of the court voted to deny the en banc request. Consequently, the

petition for en banc hearing is also denied. *See* Fed. R. App. P. 35(a). Judges

Lucero and Hartz voted to allow en banc reconsideration.


Entered for the Court,


ELISABETH A. SHUMAKER
Clerk of Court

**10-7084, DeRosa v. Workman (Lucero, J., dissenting from the denial of en banc rehearing).**

This case presents a troublesome and recurrent theme in capital cases arising out of the Oklahoma state courts, which causes me to dissent from the denial of en banc review. As I note herein, state prosecutors and courts have developed a pattern and practice of non-compliance with—if not outright ignoring of—United States Supreme Court precedent that specifically prohibits eliciting from a relative of the victim an opinion as to whether the death penalty should be imposed. The panel recognizes this disobedience of Supreme Court precedent to be a clear constitutional violation, but nonetheless deems it harmless because of the heinous nature of the crimes involved.

I would halt Oklahoma prosecutors' systematic abuse of the federal Constitution. We must recognize that capital defendants facing trial in Oklahoma state court have not been, and likely will not be, provided the due process guaranteed by the Fourteenth Amendment as a matter of state law and policy. When confronted with a clear course of objectively unreasonable decisions, as we are today, we owe no deference to the pronouncements of the Oklahoma Court of Criminal Appeals ("OCCA"). Rather, it is our duty to engage in stringent and thorough de novo review. By applying a toothless form of harmless error analysis that focuses on the reprehensibility of the crime rather than the impact of the improper testimony, we only embolden those who would commit further constitutional violations. That is assuredly not my intent, nor the intent of my respected colleagues, but it is the result. Because I am unwilling to place my imprimatur of approval on this pattern of constitutional violation, I respectfully dissent.

As the panel recognized, the Constitution does not allow a capital sentencing jury to hear a family member's opinions about the crime and the appropriate sentence for the convicted.  See Robinson v. Maynard, 943 F.2d 1216, 1217 (10th Cir. 1991) (noting that this type of victim-impact testimony is prohibited by Booth v. Maryland, 482 U.S. 496 (1987), a rule left untouched by Payne v. Tennessee, 501 U.S. 808 (1991)).  It appears that every circuit court to examine the question has come to this same conclusion.  See United States v. Brown, 441 F.3d 1330, 1352 (11th Cir. 2006); Humphries v. Ozmint, 397 F.3d 206, 217 (4th Cir. 2005) (en banc); Parker v. Bowersox, 188 F.3d 923, 931 (8th Cir. 1999); Woods v. Johnson, 75 F.3d 1017, 1038 (5th Cir. 1996).  Yet more than twenty years after Robinson, Oklahoma courts and prosecutors continue to brazenly allow unconstitutional victim testimony to infect capital sentencing.

By my count, the panel opinion represents the sixth time in the past decade that we have rejected a claim of improper victim-impact testimony in an Oklahoma death penalty case under the harmless error doctrine.  See Selsor v. Workman, 644 F.3d 984, 1026-27 (10th Cir. 2011); Welch v. Workman, 639 F.3d 980, 1002-03 (10th Cir. 2011); Welch v. Sirmons, 451 F.3d 675, 703 (10th Cir. 2006); Hooper v. Mullin, 314 F.3d 1162, 1174 (10th Cir. 2002); Hain v. Gibson, 287 F.3d 1224, 1239 (10th Cir. 2002).

Much of the unconstitutional testimony in these cases is shockingly prejudicial.  In Hain, the first of these six cases, I was on the panel.  The mother of one of the victims testified that she sought "justice for all of us who loved him, but mostly for [the victims], who are not here to speak for themselves.  I believe [the defendant] should be sentenced

to death. . . . Until the death penalty is carried out, there is always the chance he could be released." 287 F.3d at 1235-36. The mother of a second victim contrasted the "horror" of the victims' death with that of two recently euthanized family pets, testifying that she wished the victims "had been able to die that peacefully." Id. at 1235. "In order for true justice to be done," the witness continued, "I feel that [the defendant] should also be sentenced to death." Id. We held that this testimony was admitted in violation of clearly established federal law, but relying on the substantial evidence of guilt and two aggravating factors, we denied relief. Id. at 1239-40.

In Welch v. Workman, the victim's mother, after "beg[ging]" the jury for the death penalty, testified: "We can now only put our faith first in God and then our courts, and you, the jury. And I would beg you, please, don't let this happen to another family. And, again, I say I feel that he should be imposed the death penalty." 639 F.3d at 999-1000. The victim's brother stated that the defendant "deserves the death penalty. Give it to him, please." Id. at 997. We acknowledged that the OCCA's acceptance of this testimony was unreasonable in light of clearly established federal law. See id. at 1002. We further rejected the claim that "the victim impact testimony here was only marginally offensive," because the "family members' testimony violated every category of impermissible expression." Id. at 1003. But in light of "overwhelming evidence" of guilt and aggravating factors, we deemed the error harmless. Id. at 1004 (citation omitted).

In Welch v. Sirmons, no fewer than five victim family members requested a death sentence. 451 F.3d at 701. The victim's sister coupled her request with testimony "about [the victim's] son putting flowers on his mother's grave." Welch v. State, 2 P.3d 356,

- 3 -

373 (Okla. Ct. Crim. App. 2000). The victim's mother testified that the victim's father, who passed away before trial, "would sit and cry asking who had done this to his daughter," and she too requested a death sentence. Id. We again declared the OCCA's analysis contrary to clearly established federal law, but held the error was harmless in light of "the existence of two aggravating factors, both of which were amply supported by the evidence." Welch v. Sirmons, 451 F.3d at 703-04.

We follow the same course in this case. The victim's daughter offered an emotional plea for the death penalty, testifying:

> I think of how the pain and terror my mother and daddy must have suffered at the time of their murders. The horror and betrayal they felt . . . . Although [the execution of DeRosa] will not bring them back to us, it will give us some peace of mind. Our family has suffered enough because of this man. My family pleads with you to give the death penalty.

(Panel Op. 79-80 (emphasis added).) The panel correctly concludes that the OCCA's handling of this issue was an unreasonable application of clearly established federal law. (Panel Op. 86.) Nevertheless, the panel focuses on the fact that the jury found "the existence of two aggravating factors," which were "overwhelmingly supported" by the government's evidence, and once again excuses an intentional violation of the Constitution by Oklahoma prosecutors. (Panel Op. 87.)

## II

This pattern should give us great pause. Our circuit has recognized in the foregoing cases that the OCCA's victim-impact jurisprudence is unreasonable and thus disentitled to deference under AEDPA. This is no small holding. Because AEDPA was intended to "further the principles of comity, finality, and federalism," Williams v.

- 4 -

Taylor, 529 U.S. 420, 436 (2000), we will defer to a state court as long as "fairminded jurists could disagree," Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation omitted). Our court has been clear that the OCCA's victim-impact decisions violate this standard, as they are "so lacking in justification" that the OCCA's errors are "understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Faced with what can only be construed as intentional disobedience of the federal Constitution, our court has responded with impotence, effectively enabling a continuation of the misbehavior. We have consistently engaged in an ineffectual form of harmless error review to excuse Oklahoma prosecutors' systematic constitutional violation.

I would halt the OCCA's intransigence, and Oklahoma prosecutors' practice of defying the United States Supreme Court, by conducting a more searching inquiry. Despite its focus on state-court deference, even AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. at 786. The great writ survives as a "guard against extreme malfunctions in the state criminal justice systems." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). We are faced with such extreme malfunction.

Were the option not foreclosed by precedent, one could make a strong case that a state court system's pattern of ignoring the United States Supreme Court should be immune from harmless error review as akin to structural error. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (structural errors are those that affect "the framework within which the trial proceeds"). When the highest court in a state has

adopted a practice that violates the Constitution "beyond any possibility for fairminded disagreement," Harrington, 131 S. Ct. at 787, we are plainly faced with a "structural" defect as that word is ordinarily used. The Supreme Court has held to the contrary, however, indicating that improper "admission of evidence at the sentencing stage of a capital case" is subject to review for harmlessness. Fulminante, 499 U.S. at 306 (quotation omitted).

Nevertheless, our harmlessness analysis need not turn a blind eye to these constitutional violations. As the panel in this case recognized, our standard of review here is the most thorough known to law: de novo. See Ornelas v. United States, 517 U.S. 690, 700 (1996) (Scalia, J., dissenting) (characterizing the de novo standard as a "searching inquiry"); Nance v. Sun Life Assurance Co. of Can., 294 F.3d 1263, 1266 (10th Cir. 2002) (referring to de novo review as "stringent"). And "[o]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." Burger v. Kemp, 483 U.S. 776, 785 (1987).

In this case and its predecessors, we have focused on the existence of aggravating-factor findings. But in Kotteakos v. United States, the case that gave birth to the Brecht standard, the Court declared that the harmless-error inquiry "cannot be merely whether there was enough [evidence] to support the result." 328 U.S. 750, 765 (1946); see Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) ("[W]e hold that the Kotteakos harmless-error standard applies in determining whether habeas relief must be granted . . . ."). This advisement necessarily carries additional weight in capital sentencing proceedings, where jurors retain discretion to impose a life sentence regardless of the presence of aggravating

factors. See Satterwhite v. Texas, 486 U.S. 249, 258 (1988) (acknowledging that harmless-error inquiry "in the sentencing phase of a capital case may be more difficult because of the discretion that is given to the sentencer").

The panel emphasizes the heinousness of the murders at issue—a regrettably common feature of our death penalty jurisprudence—while overlooking the actual harm that resulted from the error. Yet under Brecht, we must focus on "whether the error itself had substantial influence." Kotteakos, 328 U.S. at 765. "Even those guilty of the most heinous offenses are entitled to a fair trial." Screws v. United States, 325 U.S. 91, 107 (1945). The fact that a capital defendant committed a horrible crime cannot be an excuse to repeatedly ignore constitutional errors at sentencing

I have no doubt that Tolbert's testimony had the power to sway the jury. Cf. O'Neal v. McAninch, 513 U.S. 432, 437 (1995) (if a court harbors "grave doubt" about the effect of a constitutional error on collateral review, it is not harmless). Only the most callous individual would be unaffected by a plea from a woman whose parents were brutally murdered. This is the reason such testimony is not permitted by the Constitution, and it is the reason Oklahoma prosecutors continue to elicit such statements.

In the case under review, we once again declare harmless an unequivocal violation of the Constitution. This panel, like those in the prior cases cited above, has engaged in its unenviable analysis with the utmost sincerity and vigor. But by excusing violation after violation in the face of a clearly established pattern of constitutional defiance, we validate Oklahoma courts' practice of flouting the Constitution in death penalty cases.

As the state stridently reminds us, it is of course true that we do not have direct "supervisory authority over Oklahoma courts," English v. Cody, 146 F.3d 1257, 1262 (10th Cir. 1998), and there is no direct action we can take to halt this contumacious behavior. It gets complicated when attorneys and courts do not follow Supreme Court precedent. There is but one federal court that can directly correct the OCCA's unreasonable interpretation: the United States Supreme Court. See 28 U.S.C. § 1257(a) (providing for United States Supreme Court jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"). Direct review of state criminal convictions is rare, however. Unless and until the Court elects to defend the dignity of its own precedent, we must place the emphasis of our review on the impact of these victim pleas rather than on the heinousness of the crimes.

I respectfully dissent from the denial of en banc review.